

SM:USAO#2017R00635

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 MAR 29 PM 3: 49

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. JKB-17-589 |
| | : | |
| v. | : | (Conspiracy to Participate in a |
| | : | Racketeering Enterprise, 18 U.S.C. |
| MOISES ALEXIS REYES-CANALES, | : | § 1962(d); Conspiracy to Commit |
| a/k/a Sicopata, | : | Murder in Aid of Racketeering, |
| | : | 18 U.S.C. § 1959(a)(5); Murder |
| MARLON CRUZ-FLORES, | : | in Aid of Racketeering, 18 U.S.C. |
| a/k/a Little S, | : | § 1959(a)(1); Use, Carry, Brandish, |
| | : | and Discharge a Firearm During and |
| FERMIN GOMEZ-JIMENEZ, | : | in Relation to a Crime of Violence, |
| | : | 18 U.S.C. § 924(c); Attempted Murder |
| MANUEL MARTINEZ-AGUILAR, | : | in Aid of Racketeering, 18 U.S.C. |
| a/k/a El Lunatic, | : | § 1959(a)(5); Conspiracy to Use, Carry, |
| a/k/a Zomb, | : | Brandish, and Discharge a Firearm |
| | : | During and in Relation to a Crime of |
| JUAN CARLOS SANDOVAL- | : | Violence, 18 U.S.C. § 924(o); and |
| RODRIGUEZ, | : | Aiding and Abetting, 18 U.S.C. § 2) |
| a/k/a Picaro, | : | |
| a/k/a El Pastor, | : | |
| a/k/a Gasper, | : | |
| | : | |
| DAVID DIAZ-ALVARADO, | : | |
| | : | |
| | : | |
| Defendants. | : | |

.oOo.

## SUPERSEDING INDICTMENT

## COUNT ONE

### (Conspiracy to Participate in a Racketeering Enterprise)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Superseding Indictment:

## Introduction

1. *La Mara Salvatrucha*, also known as the MS-13 gang ("MS-13"), was a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating in the State of Maryland, including in Anne Arundel County, Montgomery County, Prince George's County, and Frederick County, and throughout the United States.

2. The name "Mara Salvatrucha" was a combination of several slang terms. The word "Mara" was the term used in El Salvador for "gang." The phrase "Salvatrucha" was a combination of the words "Salva," which was an abbreviation for "Salvadoran," and "trucha," which was a slang term for "fear us," "look out," or "heads up."

3. In the United States, MS-13 has been functioning since at least the 1980s. MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups. MS-13 evolved into a gang that engaged in turf wars for the control of drug distribution locations. MS-13 quickly spread to states across the country, including Maryland.

4. MS-13 was a national and international criminal organization and was one of the largest street gangs in the United States. Gang members actively recruited members, including juveniles, from communities with a large number of Salvadoran immigrants.

5. **MOISES ALEXIS REYES-CANALES, a/k/a Sicopata; MARLON CRUZ-FLORES a/k/a Little S; FERMIN GOMEZ-JIMENEZ; MANUEL MARTINEZ-AGUILAR, a/k/a El Lunatic, a/k/a Zomb; JUAN CARLOS SANDOVAL-RODRIGUEZ,**

**a/k/a Picaro, a/k/a El Pastor, a/k/a Gasper; and DAVID DIAZ-ALVARADO**; and others known and unknown to the Grand Jury, were members and associates of MS-13.

6.  Members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering. Members also signified their membership through tattoos of devil horns in various places on their bodies. Members sometimes avoided conspicuous MS-13 tattoos, instead wearing discreet ones such as "503," spider webs, three dots in a triangle formation signifying "mi vida loca," or clown faces with phrases such as "laugh now, cry later." Some MS-13 members have chosen not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered, in order to conceal their gang affiliation from law enforcement.

7.  The gang colors of MS-13 were blue, black, and white, and members often wore clothing, particularly sports jerseys, with the number "13," or with numbers that, when added together, totaled 13, such as "76." MS-13 members also wore blue and white clothing to represent their membership, including blue and white shoes such as the Nike "Cortez." As with tattoos, some MS-13 members selected more discreet ways of dressing in order to signify their membership and at the same time avoid detection by law enforcement.

8.  MS-13 members referred to one another by their gang names, or monikers, and often did not know fellow gang members except by their gang names.

9.  Members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required that all individuals show respect and deference to the gang and its membership. To protect the gang

3

and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence. MS-13's creed was based on one of its mottos, "*Mata, roba, viola, controlla*," which translated in sum and substance to, "Kill, steal, rape, control."

10. Members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, drug trafficking, robbery, and extortion, as well as attempts and conspiracies to commit such offenses. MS-13 members were required to commit acts of violence to maintain membership and discipline within the gang, as well as against rival gang members. Participation in criminal activity by a member, particularly in violent acts directed at rival gangs or as directed by gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position. One of the principal rules of MS-13 was that its members must attack and kill rivals whenever possible. Rivals were often referred to as "chavalas." MS-13, in the area of Anne Arundel County, Prince George's County and Montgomery County, Maryland, maintained rivalries with the 18th Street Gang and the Bloods, among others.

11. Prospective members who sought to join MS-13 were required to complete an initiation process. Individuals who associated and committed crimes with the gang were called "paisas," "paros," or "observaciones." Individuals who were attempting to join the gang were called "chequeos," or "cheqs." Chequeos underwent a probationary period during which they were required to commit crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang. To join MS-13 and become full members or "homeboys," prospective members were

4

required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang. During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

12.     MS-13 was an international criminal organization, and was organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region. Cliques operated under the umbrella rules of MS-13. MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. In Maryland and the surrounding area these cliques included, among others, the Hempstead Locos Salvatrucha ("HLS" or "Hempstead"), Fulton Locos Salvatrucha ("FLS" or "Fulton"), Hollywood Locos Salvatrucha ("HWLS"), Normandie Locos Salvatrucha ("NLS" or "Normandie"), Sailors Locos Salvatrucha Westside ("SLSW" or "Sailors"), Coronados Locos Salvatrucha ("CLS"), Parkview Locos Salvatrucha ("PVLS"), Guanacos Little Psychos Salvatrucha ("GLS"), and Langley Park Salvatrucha ("LPS").

13.     **REYES-CANALES, CRUZ-FLORES, GOMEZ-JIMENEZ, MARTINEZ-AGUILAR**, and **DIAZ-ALVARADO** were members and associates of the Hempstead Clique of MS-13. **SANDOVAL-RODRIGUEZ** was a member and associate of the Fulton Clique of MS-13.

14.     Each clique was presided over by the "First Word," the leader or president of the clique. The leader was also sometimes referred to as "Primera Palabra," or "Corredor." The "Second Word," or "Segundo Palabra," was the second-in-command of the clique. General members were required to take orders from the First Word and Second Word.

5

15. MS-13 cliques kept in contact and reported to the leaders for their respective cliques, who were oftentimes based in various states or in El Salvador. Cliques contacted their leaders based in other states or El Salvador using cellular telephones during clique meetings to keep them updated on gang business, for advice, and to resolve disagreements regarding operations among local cliques. Incarcerated clique leaders based in El Salvador regularly communicated and directed orders to Maryland-based cliques through phones smuggled into Salvadoran prisons.

16. MS-13 members met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members, with the goal of inciting and encouraging further violence. Each clique held clique meetings where business specific to that clique was discussed. Any perceived indiscretions by members or violations of MS-13 rules were talked about at clique meetings and punishments or "violations" were issued. Violations often took the form of beatings by fellow MS-13 members. More serious violations resulted in the issuance of a "greenlight." A greenlight was an order and/or approval to kill.

17. MS-13 leaders from various cliques also held regional meetings to discuss issues between cliques and discuss criminal ventures among the cliques. Clique leaders from across the United States, from other countries, and within regions of the United States would meet or communicate by telephone conference to discuss gang rules and gang business, to resolve problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

18. MS-13 received money and income from sources including member dues and the extortion or "taxing" of brothels and other illegitimate businesses, as well as narcotics trafficking

and the commission of robberies. Such funds were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members who were imprisoned in the United States, both inside and outside of Maryland, and in El Salvador.

19. MS-13 members communicated about gang activities with other MS-13 members in Maryland and elsewhere using mobile telephones, telephone text messages, social media such as Facebook and e-mail accounts, and other modes of communication. Additionally, MS-13 members used international money wire transfers to conduct and promote gang activities.

### The Racketeering Enterprise

20. MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected interstate and foreign commerce ("the Enterprise"). The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### Purposes of the Enterprise

21. The purposes of the MS-13 Enterprise included:

a. Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, threats of violence, and violence, including assaults and murder;

b. Promoting and enhancing the enterprise and its leaders', members', and associates' activities, including, but not limited to, murder, extortion, drug trafficking, robbery, and other criminal activities;

c. Keeping victims, potential victims, and community members in fear of the enterprise through violence and threats of violence;

7

d.     Providing financial support and information to gang leaders, members, and associates, including individuals incarcerated in the United States and in El Salvador;

e.     Providing assistance to gang leaders, members, and associates who committed crimes on behalf of the enterprise; and

f.     Hindering, obstructing, and preventing law enforcement officers from identifying participants in the enterprise's criminal activity; from apprehending the perpetrators of those crimes; and from successfully prosecuting and punishing the offenders.

## Means and Methods of the Enterprise

22.     Among the means and methods by which the members and associates of MS-13 conducted and participated in the conduct of the affairs of the Enterprise were the following:

a.     The members and associates of MS-13 used intimidation, threats of violence, and violence, including assaults and murder, to preserve, expand, and protect MS-13's territory and activities, to promote and enhance its prestige, reputation, and position in the community, and to discipline gang members who had been disloyal or had violated gang rules;

b.     The members and associates of MS-13 attended regular gang meetings and communicated with other MS-13 members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; MS-13 leaders, members, and associates who had been arrested or incarcerated; disciplining MS-13 leaders, members, and associates who had violated gang rules; police interactions with MS-13 leaders, members, and associates; the identities of individuals suspected of cooperating with law enforcement, and proposed actions to be taken against them; and plans

8

and agreements regarding the commission of future crimes, as well as ways to conceal these crimes;

        c.     The members and associates of MS-13 also communicated with other MS-13 members in Maryland and elsewhere, and represented their gang allegiance, through social media such as Facebook, including by posting photographs of themselves with other gang members, showing gang hand signs, wearing colors or clothing associated with MS-13, and posing with weapons or gang-related graffiti, and by sending and/or posting messages referencing their affiliation with MS-13.

        d.     The members and associates of MS-13 financed the enterprise through a variety of activities, including the extortion of money – sometimes referred to as "rent" – from gang members and from legitimate and illegitimate businesses operating on the gang's turf, as well as through the commission of robberies;

        e.     The members and associates of MS-13 distributed and agreed to distribute controlled substances on behalf of the gang;

        f.     The funds raised by the gang were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members, including those imprisoned in the United States, inside and outside of Maryland, and in El Salvador.

        g.     The members and associates of MS-13 hindered and obstructed the efforts of law enforcement to identify, apprehend, and successfully prosecute and punish gang members;

        h.     The members and associates of MS-13 would investigate rival gang members or other persons targeted for violence; would obtain information about such

targets, including locations frequented by them; and would use such information in their plans to attack such targets.

           i.      The members and associates of MS-13 would and did agree that acts of murder, including conspiracy and attempts to commit murder, and other acts of violence, would be committed by members and associates of MS-13 against rival gang members and persons deemed as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

### The Racketeering Conspiracy

23.     Beginning on a date unknown to the Grand Jury, but at least prior to in or about 2015, and continuing through at least in or about 2017, in the District of Maryland and elsewhere,

**MOISES ALEXIS REYES-CANALES,**
**a/k/a Sicopata,**
**MARLON CRUZ-FLORES,**
**a/k/a Little S,**
**FERMIN GOMEZ-JIMENEZ,**
**MANUEL MARTINEZ-AGUILAR,**
**a/k/a El Lunatic,**
**a/k/a Zomb,**

defendants herein, and others known and unknown to the Grand Jury, being persons employed by and associated with MS-13, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly conspire to violate Title 18 U.S.C. § 1962(c), that is to conduct and participate, directly, and indirectly, in the conduct of the affairs of the MS-13 Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), which pattern of racketeering activity consisted of:

      (a)     Multiple acts involving:

(1)    murder, in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, 1-202, and the Common Law of Maryland, punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205, and 2-206;

(2)    extortion, in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, 1-202, and the Common Law of Maryland;

(3)    robbery, in violation of Maryland Code, Criminal Law §§ 3-402 and 3-403, 1-202, and Common Law of Maryland; and

(b)    Multiple offenses involving drug trafficking in violation of 21 U.S.C. §§ 841 and 846;

(c)    Multiple acts indictable under:

(1)    18 U.S.C. §§ 1512 and 1513 (relating to tampering or retaliation against a witness, victim, or informant); and

(2)    18 U.S.C. § 1951 (relating to interference with commerce, robbery or extortion).

24.    It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

**Overt Acts**

25.    In furtherance of the conspiracy, and to effect the illegal object thereof, the defendants and their co-conspirators performed, participated in, and did the following acts, among others, in the District of Maryland and elsewhere:

a.  On or about September 27, 2015, **MARTINEZ-AGUILAR** and other members and associates of MS-13 confronted a person known to the Grand Jury and identified for the purposes of this Superseding Indictment as Victim-4, and threatened Victim-4 that Victim-4 must pay money to MS-13 to continue selling marijuana in MS-13 territory.

b.  On or about September 27, 2015, **MARTINEZ-AGUILAR** and others then assaulted and struck Victim-4 with a blunt object during an altercation between MS-13 members and associates and friends of Victim-4.

c.  In or about September 2015, **MARTINEZ-AGUILAR** and another member and associate of MS-13 assaulted Victim-4.

d.  In or about February 2016, members and associates of MS-13 conspired to murder a member or associate of the rival 18th Street gang, known to the Grand Jury and identified for the purposes of this Superseding Indictment as Victim-1.  As part of the plan, members and associates of MS-13 spoke with MS-13 leaders outside of the District of Maryland to seek approval to commit the murder.

e.  On or about March 11, 2016, **SANDOVAL-RODRIGUEZ** and another member or associate of MS-13 lured Victim-1 to a park in Annapolis, Maryland with the intent to murder Victim-1.

f.  On or about March 11, 2016, **CRUZ-FLORES, GOMEZ-JIMENEZ, SANDOVAL-RODRIGUEZ,** and **DIAZ-ALVARADO**, and other members and associates of MS-13 murdered Victim-1 in Annapolis, Maryland.

g.  In or around October 2016, **REYES-CANALES, CRUZ-FLORES, GOMEZ-JIMENEZ, MARTINEZ-AGUILAR,** and other members and associates of MS-13

conspired to murder a member or associate of the rival 18th Street gang, known to the Grand Jury and identified for the purposes of this Superseding Indictment as Victim-2, using guns and knives.

  h.  On or about October 23, 2016, **CRUZ-FLORES** and **REYES-CANALES** each possessed a firearm to use during the murder of Victim-2.

  i.  On or about October 23, 2016, **GOMEZ-JIMENEZ** armed himself with a sharp weapon for the purpose of killing Victim-2.

  j.  On or about October 23, 2016, **CRUZ-FLORES** lured Victim-2 to an area of Annapolis, Maryland with the intent to murder Victim-2.

  k.  On or about October 23, 2016, **REYES-CANALES, CRUZ-FLORES, GOMEZ-JIMENEZ, MARTINEZ-AGUILAR,** and other members and associates of MS-13 decided to kill an individual known to the Grand Jury and identified for the purposes of this Superseding Indictment as Victim-3 because Victim-2 was with Victim-3 and would be a witness to the murder of Victim-2.

  l.  On or about October 23, 2016, **REYES-CANALES, CRUZ-FLORES, GOMEZ-JIMENEZ, MARTINEZ-AGUILAR,** and other members and associates of MS-13 attempted to kill Victim-2 by stabbing Victim-2 multiple times.

  m.  On or about October 23, 2016, **REYES-CANALES, CRUZ-FLORES, GOMEZ-JIMENEZ, MARTINEZ-AGUILAR,** and other members and associates of MS-13 attempted to kill Victim-3 by shooting Victim-3 multiple times and stabbing Victim-3 multiple times.

n.      On or about October 23, 2016, **MARTINEZ-AGUILAR** and another member and associate of MS-13 attempted to kill Victim-2 by running over Victim-2 with Victim-2's car.

o.      On or about October 23, 2016, **MARTINEZ-AGUILAR** and another member and associate of MS-13 attempted to dispose of Victim-2's car by burning the car.

p.      On or about October 24, 2016, **REYES-CANALES** and **CRUZ-FLORES** fled to Georgia to avoid detection by law enforcement.

q.      Between in or about January 2016 and February 2017, **REYES-CANALES, CRUZ-FLORES, GOMEZ-JIMENEZ, MARTINEZ-AGUILAR**, and other members and associates of MS-13 sold cocaine and marijuana to raise funds for MS-13. The drug proceeds were used for, among other reasons, the purchase of more narcotics, weapons, and to send to MS-13 members and associates in other states and El Salvador.

r.      Between in or about January 2016 and February 2017, **REYES-CANALES** collected the proceeds from the narcotics sales from the other members and associates of MS-13.

### Special Sentencing Factors Regarding Count One

26.      On or about March 11, 2016, in the District of Maryland, **GOMEZ-JIMENEZ, CRUZ-FLORES, SANDOVAL-RODRIGUEZ**, and **DIAZ-ALVARADO** unlawfully conspired with each other and others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim-1, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

14

27. On or about March 11, 2016, in the District of Maryland, **GOMEZ-JIMENEZ,** **CRUZ-FLORES, SANDOVAL-RODRIGUEZ,** and **DIAZ-ALVARADO** feloniously, willfully, and with deliberately premeditated malice, killed and murdered Victim-1, in violation of Maryland Code, Criminal Law § 2-201(a)(1).

28. In or about October 2016, in the District of Maryland, **REYES-CANALES,** **GOMEZ-JIMENEZ, CRUZ-FLORES,** and **MARTINEZ-AGUILAR** unlawfully conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim-2 and Victim-3, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

29. On or about October 23, 2016, in the District of Maryland, **REYES-CANALES,** **GOMEZ-JIMENEZ, CRUZ-FLORES,** and **MARTINEZ-AGUILAR** feloniously, willfully, and with deliberately premeditated malice attempted to murder Victim-2 in violation of Maryland Code, Criminal Law §§ 2-205 and 2-201, and the Common Law of Maryland, and punishable pursuant to Criminal Law § 1-201.

30. On or about October 23, 2016, in the District of Maryland, **REYES-CANALES,** **GOMEZ-JIMENEZ, CRUZ-FLORES,** and **MARTINEZ-AGUILAR** feloniously, willfully, and with deliberately premeditated malice attempted to murder Victim-3 in violation of Maryland Code, Criminal Law §§ 2-205 and 2-201, and the Common Law of Maryland, and punishable pursuant to Criminal Law § 1-201.

All in violation of 18 U.S.C. § 1962(d)

## COUNT TWO
### (Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 22 of Count One of this Superseding Indictment are incorporated here.

2.     MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected interstate and foreign commerce ("the Enterprise"). The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

3.     The Enterprise, through its members, leaders, and associates, engaged in racketeering activity, as defined in 18 U.S.C. §§ 1959(b)(1), and 1961(1), that is acts involving murder, extortion, and robbery, in violation of Maryland Law; and offenses involving drug trafficking, in violation of 21 U.S.C. §§ 841 and 846; and offenses indictable under 18 U.S.C. §§ 1512 and 1513 (relating to tampering or retaliation against a witness, victim, or informant) and 18 U.S.C. § 1951 (relating to interference with commerce, robbery or extortion).

4.     On or about March 11, 2016, in the District of Maryland,

**MARLON CRUZ-FLORES,**
**a/k/a Little S,**
**FERMIN GOMEZ-JIMENEZ,**
**JUAN CARLOS SANDOVAL-RODRIGUEZ,**
**a/k/a Picaro,**
**a/k/a El Pastor,**
**a/k/a Gasper,**
**DAVID DIAZ-ALVARADO,**

together with others, known and unknown, for the purpose of gaining entrance to, and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did murder Victim-1, in violation of and punishable pursuant to Maryland Code, Criminal Law §§ 2-201 and 2-204, and the Common Law of Maryland, all in violation of 18 U.S.C. § 1959(a)(1).

18 U.S.C. § 1959(a)(1)
18 U.S.C. § 2

## COUNT THREE
### (Conspiracy to Commit Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 3 of Count Two of this Superseding Indictment are incorporated here.

2. On or about March 11, 2016, in the District of Maryland,

**MARLON CRUZ-FLORES,**
**a/k/a Little S,**
**FERMIN GOMEZ-JIMENEZ,**
**JUAN CARLOS SANDOVAL-RODRIGUEZ,**
**a/k/a Picaro,**
**a/k/a El Pastor,**
**a/k/a Gasper,**
**DAVID DIAZ-ALVARADO,**

for the purpose of gaining entrance to, and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to murder Victim-1, in violation of and punishable pursuant to Maryland Code, Criminal Law §§ 2-201, 2-204, and 1-202, and the Common Law of Maryland, all in violation of 18 U.S.C. § 1959(a)(5).

18 U.S.C. § 1959(a)(5)

## COUNT FOUR
### (Attempted Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 3 of Count Two of this Superseding Indictment are incorporated here.

2.      On or about October 23, 2016, in the District of Maryland,

**MOISES ALEXIS REYES-CANALES,**
**a/k/a Sicopata,**
**MARLON CRUZ-FLORES,**
**a/k/a Little S,**
**FERMIN GOMEZ-JIMENEZ,**
**MANUEL MARTINEZ-AGUILAR,**
**a/k/a El Lunatic,**
**a/k/a Zomb,**

together with others known and unknown, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, attempted to murder and aided and abetted in the attempted murder of Victim-2, in violation of Maryland Code, Criminal Law, §§ 2-201 and 2-205, and the Common Law of Maryland.

18 U.S.C. § 1959(a)(5)
18 U.S.C. § 2

19

**COUNT FIVE**
**(Conspiracy to Commit Murder in Aid of Racketeering)**

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 3 of Count Two of this Superseding Indictment are incorporated here.

2. On or about October 23, 2016, in the District of Maryland,

**MOISES ALEXIS REYES-CANALES,**
**a/k/a Sicopata,**
**MARLON CRUZ-FLORES,**
**a/k/a Little S,**
**FERMIN GOMEZ-JIMENEZ,**
**MANUEL MARTINEZ-AGUILAR,**
**a/k/a El Lunatic,**
**a/k/a Zomb,**

for the purpose of gaining entrance to, and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to murder Victim-2 and Victim-3, in violation of and punishable pursuant to Maryland Code, Criminal Law §§ 2-201, 2-204, and 1-202, and the Common Law of Maryland, all in violation of 18 U.S.C. § 1959(a)(5).

18 U.S.C. § 1959(a)(5)

## COUNT SIX
### (Use and Carry a Firearm During and In Relation to a Crime of Violence)

The Grand Jury for the District of Maryland further charges that:

1. On or about October 23, 2016, in the District of Maryland,

**MOISES ALEXIS REYES-CANALES,**
**a/k/a Sicopata,**
**MARLON CRUZ-FLORES,**
**a/k/a Little S,**
**FERMIN GOMEZ-JIMENEZ,**
**MANUEL MARTINEZ-AGUILAR,**
**a/k/a El Lunatic,**
**a/k/a Zomb,**

together with others known and unknown, did knowingly possess, brandish, and discharge a firearm, and aided and abetted, the knowing possession, brandish, and discharge of a firearm in furtherance of a crime of violence for which he may be prosecuted in a court of the United States, to wit: Attempted Murder in Aid of Racketeering, as set forth in Count Four of this Superseding Indictment, in violation of 18 U.S.C. § 1959(a)(5), which is incorporated by reference.

18 U.S.C. § 924(c)
18 U.S.C. § 2

## COUNT SEVEN
### (Attempted Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 3 of Count Two of this Superseding Indictment are incorporated here.

2. On or about October 23, 2016, in the District of Maryland,

**MOISES ALEXIS REYES-CANALES,**
**a/k/a Sicopata,**
**MARLON CRUZ-FLORES,**
**a/k/a Little S,**
**FERMIN GOMEZ-JIMENEZ,**
**MANUEL MARTINEZ-AGUILAR,**
**a/k/a El Lunatic,**
**a/k/a Zomb,**

together with others known and unknown, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, attempted to murder and aided and abetted in the attempted murder of Victim-3, in violation of Maryland Code, Criminal Law, §§ 2-201 and 2-205, and the Common Law of Maryland.

18 U.S.C. § 1959(a)(5)
18 U.S.C. § 2

## COUNT EIGHT
### (Use and Carry a Firearm During and In Relation to a Crime of Violence)

The Grand Jury for the District of Maryland further charges that:

1. On or about October 23, 2016, in the District of Maryland,

**MOISES ALEXIS REYES-CANALES,**
**a/k/a Sicopata,**
**MARLON CRUZ-FLORES,**
**a/k/a Little S,**
**FERMIN GOMEZ-JIMENEZ,**
**MANUEL MARTINEZ-AGUILAR,**
**a/k/a El Lunatic,**
**a/k/a Zomb,**

together with others known and unknown, did knowingly possess, brandish, and discharge a firearm, and aided and abetted, the knowing possession, brandish, and discharge of a firearm in furtherance of a crime of violence for which he may be prosecuted in a court of the United States, to wit: Attempted Murder in Aid of Racketeering, as set forth in Count Seven of this Superseding Indictment, in violation of 18 U.S.C. § 1959(a)(5), which is incorporated by reference.

18 U.S.C. § 924(c)
18 U.S.C. § 2

23

## COUNT NINE
### (Conspiracy to Possess a Firearm in Furtherance of Crime of Violence)

The Grand Jury for the District of Maryland further charges that:

1. On or about October 23, 2016, in the District of Maryland,

**MOISES ALEXIS REYES-CANALES,**
**a/k/a Sicopata,**
**MARLON CRUZ-FLORES,**
**a/k/a Little S,**
**FERMIN GOMEZ-JIMENEZ,**
**MANUEL MARTINEZ-AGUILAR,**
**a/k/a El Lunatic,**
**a/k/a Zomb,**

together with others known and unknown, did knowingly and intentionally conspire and agree

with each other and other to possess, brandish, and discharge firearm in furtherance of a crime of

violence for which he may be prosecuted in a court of the United States, to wit: Attempted

Murder in Aid of Racketeering, as set forth in Count Four and Count Seven of this Superseding

Indictment, in violation of 18 U.S.C. § 1959(a)(5), which is incorporated by reference.

18 U.S.C. § 924(o)

_Stephen M. Schenning /sм_
Stephen M. Schenning
Acting United States Attorney

. . A TRUE BILL: __ .... . ...,

# SIGNATURE REDACTED

¨Foreperson

Date: _3/29/18_