

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

*Zachary Stendig*
*Assistant United States Attorney*
*Zachary.Stendig@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201*

*MAIN: 410-209-4800*
*FAX: 410-962-9293*

January 21, 2021

The Honorable James K. Bredar
Chief United States District Judge
United States Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201

      Re:     Sentencing in United States v. Fermin Gomez-Jimenez
                Crim. No. JKB-17-589

Dear Judge Bredar:

      We are writing in advance of Defendant Fermin Gomez-Jimenez's sentencing in the above-captioned case, currently scheduled for February 4, 2021. For the reasons discussed below, the United States recommends a sentence of 336 months' imprisonment as to Count 1 and a consecutive sentence of 120 months' imprisonment as to Count 8, for a total sentence of 456 months' (38 years) imprisonment. The Government submits that 38 years' imprisonment is an appropriate sentence that is sufficient, but not greater than necessary, and achieves the purposes of federal sentencing.

## Introduction

      From 2015 to 2017, the Defendant participated in a racketeering conspiracy that involved, among other offenses, the brutal murder of a suspected rival gang member on March 11, 2016, and the attempted murder of two other people on October 23, 2016. On September 9, 2019, and continuing on September 11, 2019, the Defendant pled guilty to two counts in the Superseding Indictment: Count One, Conspiracy to Participate in a Racketeering Enterprise; and Count Eight, Using, Carrying, and Discharging a Firearm During and In Relation to a Crime of Violence. As part of the plea agreement, the Defendant admitted his membership in the enterprise, *La Mara Salvatrucha*, commonly known as MS-13, as well as his role in the affairs of the enterprise.

## Factual Background

      The Defendant is a member of MS-13. The gang operated in Annapolis, Maryland, as well as other parts of Maryland and the United States. The Court is well-versed in the facts of the March 11, 2016 murder, having presided over the trial of the Defendant's co-conspirator, Juan Carlos Sandoval-Rodriguez, in October 2019. On March 11, 2016, the Defendant and his co-conspirators planned and agreed to murder Jose Portillo ("Victim-1"), who the gang suspected of being a rival gang member. That evening, MS-13 members/associates lured Victim-1 to Quiet Waters Park in

Annapolis, Maryland, with the intention of killing him. Prior to Victim-1 arriving at the park, the Defendant borrowed a knife from a co-conspirator. The Defendant would later use that knife to stab Victim-1.

Once Victim-1 arrived at the park, members of the gang struck Victim-1 in the head with a branch or stick and the members and associates of MS-13, including the Defendant, proceeded to stab Victim-1 repeatedly, killing Victim-1. While the Defendant and other members of the gang stabbed Victim-1, other MS-13 members/associates stood watch outside of the park to ensure no one entered or left the park, and to watch for police, so that the gang could complete the murder of Victim-1. During this time, an MS-13 co-conspirator communicated by phone and through text messages with co-conspirator Marlon Cruz-Flores and at least one other MS-13 member/associate inside the park, to let them know that no one entered the park and they could complete the murder. After the gang killed Victim-1, the Defendant left the park to stand watch so that other MS-13 associates could enter the park to see what happened to Victim-1. Other MS-13 members and associates involved in the murder then buried Victim-1 in a shallow grave inside the park. Law enforcement did not locate Victim-1's body until August 28, 2017, when it was exhumed by law enforcement

On or about October 23, 2016, the Defendant, along with other members and associates of the MS-13 Hempstead clique in Annapolis, Maryland, devised a plan to murder Victim-2, an unlicensed taxi driver. The Defendant and other members and associates of MS-13, including several of his co-defendants, along with others, met at Quiet Waters Park to discuss the plan to murder Victim-2. At the park, a co-conspirator explained that the gang must kill Victim-2 because the gang believed he was a member of a rival gang. At the meeting, each member of the conspiracy was assigned a task to complete the murder and dispose of evidence. The group planned to use machetes, knives, and guns to kill the victim. Co-conspirator Cruz-Flores and another co-defendant each had a firearm, and all of the participants in the meeting were aware that the firearms would be used in the murder.

At approximately 10:00 p.m. that night, co-conspirator Cruz-Flores called Victim-2 using another member/associate's cell phone to arrange for an unlicensed taxi ride. Victim-2 arrived with another passenger, Victim-3. Cruz-Flores informed Victim-2 that he wanted to go to the area of 783 Annapolis Neck Road, Annapolis, Maryland. When Victim-2 arrived at the location, a co-defendant approached the vehicle and pointed a handgun at Victim-2 and Victim-3. Cruz-Flores also produced a handgun and pointed it at Victim-2 and Victim-3. Victim-3 then tried to run and Cruz-Flores discharged the firearm, shooting Victim-3 in the leg, while another co-conspirator attacked Victim-3 with a machete. Victim-2 also tried to run. Co-conspirators took Victim-2's vehicle and unsuccessfully attempted to run over Victim-2 with his car. Co-conspirators then chased Victim-2 and the Defendant repeatedly struck Victim-2 with a knife causing several stab wounds. The gang then heard police sirens and fled. A short time later, police arrested the Defendant nearby with Victim-2's blood on his hands and clothes. A surveillance camera in the area captured the Defendant's assault on Victim-2 and the attempt to run over Victim-2 with Victim-2's vehicle. After his arrest, police swabbed the Defendant's hands. Victim-2's blood matched the DNA profile recovered from the swab of the Defendant's hands.

Police officers discovered Victim-2 and Victim-3 lying in a street, in pools of their own blood, after the savage attack. Victim-3 was shot in both legs and suffered machete injuries to his head, body, and both hands. Medics transported Victim-3 to Shock Trauma at the University of Maryland Medical Center with, among many injuries, a skull fracture, multiple deep tissue wounds to the skull and neck, lacerations to his shoulders, multiple fractures to both hands and wrists, a ballistic injury to the right buttock/hip/thigh with a right femur fracture, and a left tibia fracture. Ultimately, Victim-3 was intubated for several weeks and remained unconscious during that time. Victim-3 underwent several surgeries for the wounds to his head and to repair his hands, including several skin grafts to try to reattach portions of his hands and arms. Victim-3 told investigators and prosecutors that he now suffers from seizures because of the attack and continues to seek treatment for his injuries. Victim-3 will live with the impact of this attack for the rest of his life and will always be at a disadvantage when it comes to using his hands.

Victim-2 was also transported to Shock Trauma, where he was resuscitated upon arrival, and treated for multiple deep tissue wounds on his body and head from being stabbed, along with an injury to one of his lungs. Victim-2 also suffered a calvarial (skullcap) fracture and required hundreds of staples to close the wounds on his body. Victim-2 still suffers from ongoing headaches and difficulty breathing after doctors were required to remove a portion of his lung due to the attack.

Thankfully, both victims lived, albeit with many long-lasting physical and psychological injuries. In any event, the Defendant knowingly participated in this assault and the murder of Victim-1 to raise his status in MS-13 and to assert the authority of MS-13 in Annapolis. However, the Defendant and the gang were mistaken about Victim-2's membership in a rival gang, making the attack on the victims all the more senseless. Not only did the Defendant willingly and intentionally commit these violent acts, but he furthered the gang's objectives by selling cocaine and marijuana to purchase drugs and weapons, some of which were used in this assault.

### Sentencing Guidelines and Criminal History Calculation

The United States has no objections to the PSR of October 29, 2020 (ECF 354),[1] which tracks the Guidelines factors agreed upon by the parties in the plea agreement. The total adjusted offense level for Count One is 42. PSR ¶ 54.

In addition to any sentence imposed for Count One, Count Eight requires that the Defendant be sentenced to a consecutive term of imprisonment of 120 months. Pursuant to U.S.S.G. § 2K2.4, the Guidelines sentence for this offense is 120 months' imprisonment. PSR ¶ 55.

The Defendant has no prior criminal conviction and has a criminal history category of I. Accordingly, the Defendant's advisory Sentencing Guidelines range is 360 months' to life imprisonment as to Count One to be followed by a consecutive 120 months term of imprisonment as to Count Eight. PSR ¶ 82.

---

[1] The PSR was prepared on October 16, 2019 and revised on November 5, 2019, December 6, 2019, October 22, 2020, and filed on October 29, 2020.

3

**Factors Set Forth in 18 U.S.C. § 3553(a)**

The Defendant should receive a sentence commensurate with his conduct for murdering Victim-1 and severely injuring and forever altering the lives of Victim-2 and Victim-3. The Government submits that the factors set forth in Title 18, United States Code, Section 3553(a) – specifically, the nature and circumstances of the offense and the Defendant's history and characteristics, the need for the sentence imposed to provide just punishment and reflect the seriousness of the offense, and the protection of the public from further crimes of the Defendant – clearly supports the jointly recommended sentence of the parties of 456 months of imprisonment. The Government further submits that a sentence of 38 years' imprisonment, which is slightly below the total advisory Guidelines sentencing range under the calculations set forth above, is sufficient, but not greater than necessary, to accomplish the goals of the Sentencing Reform Act. In recommending this sentence, the Government acknowledges and recognizes the Defendant's early acceptance of responsibility, and his history and other personal characteristics. The Government does not believe, however, that a sentence lower than 456 months of imprisonment would be sufficient or appropriate in this case, particularly in light of several of the relevant § 3553(a) factors that are discussed below.

<u>Nature and Circumstances of the Offenses</u>

The Defendant, just like his co-defendants Cruz-Flores and Sandoval-Rodriguez, is a murderer. He was also a member of a racketeering enterprise designed to instill fear in the Central American community in Annapolis and whose primary objective is to promote violence. The nature and circumstance of the offenses therefore suggest that a sentence of 456 months is appropriate. Simply put, the Defendant demonstrated his disregard for human life when he and his co-defendants repeatedly stabbed and killed Victim-1. Indeed, the evidence demonstrates that Victim-1's killing was intended to advance the Defendant's rank within MS-13.

As to the attempted murders of Victim-2 and Victim-3, the nature and circumstances of these offenses are brutal and senseless, and will have long-lasting, painful, and irreversible consequences for the victims. The Defendant's involvement with MS-13 not only included the sale of drugs to further the gang's goal of funding the gang and purchasing weapons, but also the attempted murders of these two innocent victims. Therefore, the nature and circumstances of the offenses calls for a sentence of 456 months of imprisonment.

<u>History and Characteristics of the Defendant</u>

The Defendant's history and characteristics offer some mitigation to justify the downward variance to 456 months' imprisonment from the bottom end of the Defendant's advisory Guidelines range. To begin, these convictions are the first adult convictions for the Defendant. Additionally, at the time of the murder, the Defendant was only 18 years old, and at the time of the attempted murders, he was 19 years old. Furthermore, the Defendant lacks much formal education as he was expelled from Annapolis High School prior to graduating. PSR ¶ 79. Indeed, the Defendant has experienced many difficult challenges in his life, including during his travel from El Salvador to the United States. *See* PSR ¶¶ 67, 69.

<u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant</u>

In constructing the Defendant's sentence, the Court should take into account the seriousness of the Defendant's conduct, the need to promote respect for the law, and the need to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A).

Certainly, the seriousness of the Defendant's conduct cannot be understated. Murder strikes at the fabric of society. The Defendant's senseless murder of Victim-1 in furtherance of MS-13 turned an otherwise serene park in Annapolis into a graveyard. The Defendant also violently attacked Victim-2 with a knife, nearly killing him. The Defendant and his co-conspirators planned these premeditated attacks, knowing they intended to kill all three victims with guns, knives, and machetes. The surviving victims of these senseless gang assaults will go through the rest of their lives dealing with the lasting psychological, emotional, and physical trauma of these heinous crimes. Therefore, a significant sentence of imprisonment is necessary to provide just punishment for the offenses. A sentence of 456 months' will still allow the Defendant to lead a productive life after prison, if he so chooses.

The need to afford adequate deterrence to criminal conduct as to both the Defendant, as well as others involved in similar crimes, also calls for a sentence of 456 months' imprisonment. 18 U.S.C. § 3553(a)(2)(B). A significant prison sentence will send a message to others that participating in gang activity and harming other members of the community will be punished accordingly. As this Court knows, MS-13 maintains a significant presence throughout Maryland and many assaults, extortions, and murders in recent years have been attributed to the gang. By sentencing this Defendant to a significant term of imprisonment, it not only sends a message to the Defendant that this conduct will not be tolerated, but to other members of MS-13, and other gangs, that this conduct carries significant penalties if one chooses to participate in these crimes and harm others.

Additionally, a sentence of 456 months' imprisonment will protect the public from further crimes of the Defendant. 18 U.S.C. § 3553(a)(2)(C). Certainly, a long period of incarceration will remove the Defendant from the community until he is well into adulthood. This will hopefully protect the community at large from any further violent conduct and gang activity by the Defendant. Additionally, many educational and vocational programs are available inside the Federal Bureau of Prisons that will hopefully afford the Defendant the opportunity to become a productive member of society upon his release from custody. 18 U.S.C. § 3553(a)(2)(D). Indeed, the Defendant hopes to pursue a trade in HVAC while in the Bureau of Prisons. PSR ¶ 81. Hopefully, a lengthy sentence in the Federal Bureau of Prisons will afford the Defendant the opportunity to advance his educational and vocational abilities.

Pursuant to 18 U.S.C. § 3553(a)(6), a sentence of 456 months' imprisonment would not create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. Specifically, this Court sentenced co-defendant Marlon Cruz-Flores, who participated in the same conduct and had the same criminal history category, to a jointly recommended sentence of 456 months' imprisonment on December 6, 2019.

Ultimately, the Defendant committed the most serious crime that one can commit, and he did so under circumstances that, far from supplying any form of mitigation, demonstrate an utter disregard for human life.  A sentence of 456 months of imprisonment will warn the public that one who takes another life and attempts to take two others in such a ruthless manner can expect to spend at least 38 years in the Federal Bureau of Prisons.

<u>The Need to Provide Restitution to Any Victims of the Offense</u>

The United States hopes to submit complete restitution information to the Court prior to sentencing on February 4, 2021. The Government, in conjunction with this letter, will provide the Court with restitution for funeral expenses for Victim-1, and hopes to submit medical bills for Victim-2 and Victim-3 prior to sentencing. However, the Government will certainly have this information when the Court sets a date for the final determination of the victims' losses, not to exceed 90 days, pursuant to 18 U.S.C. § 3664(d)(5). Lastly, The United States will ask that the Defendant, like the others in this case who have been convicted for the offenses related to the murder of Victim-1 and the attempted murders of Victim-2 and Victim-3, be made jointly and severally liable for any restitution to these victims.

**Conclusion**

Based on the foregoing, the United States respectfully recommends a sentence below the low-end of the advisory Sentencing Guidelines range of 456 months' imprisonment.  For the foregoing reasons, this sentence is sufficient, but not greater than necessary, to comply with factors to be considered under 18 U.S.C. § 3553(a) in imposing a sentence.

Respectfully Submitted,

Robert K. Hur
United States Attorney

   /s/
Zachary Stendig
Assistant United States Attorney

Matthew K. Hoff
Samantha Mildenberg Loiero
DOJ Trial Attorneys

cc: Jenifer Wicks and Teresa Whalen, Counsel for the Defendant via ECF and email